```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

Jean Godden,                         :

    Plaintiff,                   :

    v.                           :    Case No. 2:03-cv-1183

Long Term Disability Plan for        :    MAGISTRATE JUDGE KEMP
Employees of Huntington Banc
Shares, et al.                       :

    Defendants.                  :

## OPINION AND ORDER

In an Opinion and Order filed on December 7, 2004, the Court remanded this ERISA disability benefits case to the plan administrator for further consideration of plaintiff Jean Godden's application for long-term disability benefits.  That review was undertaken, and the record of those additional proceedings was filed with the Court on March 28, 2007.  Subsequently, both parties moved for judgment on the administrative record.  Defendants also filed a reply memorandum.  For the following reasons, judgment will be entered in favor of the defendants.

I.

The basic facts surrounding Ms. Godden's application, the initial proceedings on that application, and the Court's decision to remand the application for further review are set forth in full in the December 7, 2004 decision.  Briefly, Ms. Godden had claimed a physical inability to do her job based primarily on her fibromyalgia.  Defendants, who will be referred to collectively as "Unum," rejected the opinions of those doctors who had concluded that Ms. Godden suffered from fibromyalgia and denied

her claim for benefits. As the Court noted, the reasons articulated for that decision did not comport with a fair reading of the administrative record. Rather, "the [administrative] decision sifted through the records in order to downplay or disregard entirely the significance of the very clinical findings which, according to the Plan Administrator, were lacking, and the lack of those findings was the primary reason cited in support of the decision to deny benefits." Opinion and Order of December 7, 2004, at 10. The case was therefore remanded to "give the Plan Administrator the opportunity to consider the totality of the evidence" including evidence that Ms. Godden had been awarded disability benefits by the Social Security Administration. Id. at 10-11.

After reconsidering the issue, Unum granted Ms. Godden benefits for a period of twenty-four months. It discontinued those benefits after twenty-four months, however, because it had awarded benefits not on the basis of Ms. Godden's fibromyalgia, but because she was disabled by a psychological disorder, including depression and an anxiety disorder. Under the plan, benefits awarded on account of a mental illness are payable only for twenty-four months. As an alternative rationale, Unum explained that any disability due to fibromyalgia is based primarily upon self-reported symptoms, and payment on account of such disabilities is also limited to 24 months

Ms. Godden now asks the Court to overturn that decision as arbitrary and capricious, contending that the only reasonable interpretation of the record is that she left work in 2002 due to her fibromyalgia and that it has been a disabling condition since that time. The questions before the Court are (1) whether Unum's decision that Ms. Godden's disability is "due to **mental illness**" and therefore subject to a "limited pay period up to 24 months," rec. at UPCL00292, is arbitrary and capricious; and (2) whether

the alternative rationale, relating to disabilities based primarily upon self-reported symptoms, is arbitrary and capricious.

## II.

The legal standard by which Unum's decision is judged is set forth on pages five through seven of the Court's December 7, 2004 Opinion and Order. There have been no significant changes in the applicable law since the date of that decision. That legal standard is therefore incorporated by reference in its entirety. The Court also incorporates its summary of the administrative record compiled in connection with Ms. Godden's original application for benefits. The supplemental administrative record will be summarized below.

## III.

The supplemental administrative record reflects the following developments after the case was remanded. All citations to that record (doc. #35) will be to the UPCL-REMAND document number.

Ms. Godden's psychologist, Dr. Hausman, completed a form on February 8, 2006, noting that he had made a diagnosis of depressed mood due to physical condition of fibromyalgia and chronic pain. He expressed the opinion that Ms. Godden was unable to sustain her focus for any extended period. He rated her GAF at 55-65, which is indicative of a mild to moderate impairment. (00431-32).

Ms. Godden also filled out a supplemental statement indicating that in addition to her physical limitations on lifting, standing or bending, she could not maintain her attention for any length of time and that her reliability was questionable. At that time, she was enrolled in a chronic pain management program and also seeing Dr. Hausman on a monthly basis. (00422-29).

Dr. Garwood, who had treated Ms. Godden for fibromyalgia, also submitted a supplemental report.  Most significantly, he concluded that Ms. Godden could perform only two hours of sedentary work activity in an eight-hour day.  He did note psychological issues including poor concentration, attention, and task orientation.  (00418-421).

Ms. Godden was seen on multiple occasions in 2005 and 2006 by Dr. Watson for chronic pain management.  He treated her with injections in the cervical and thoracic spines, which did give her some improvement, and he also prescribed Lexapro for depression.  She reported severe generalized pain during this time period.  (00368-392).

Unum submitted the available records to one of its medical consultants, Christina Young, R.N., for review.  When Ms. Young conducted her first review on October 19, 2006, Ms. Godden's social security file had not yet been received.  Reviewing the other records, Ms. Young concluded that, in general, the treatment notes were sporadic rather than continuous and did not show the type of aggressive treatment which is ordinarily recommended for fibromyalgia, including a "comprehensive team approach" which involves cognitive behavioral therapy, stress reduction, medication, physical therapy, lifestyle modifications, steroid injections, and NSAIDs.  She also saw no evidence to support Ms. Godden's claim of a cognitive impairment.  (00184-89).

Shortly thereafter, Ms. Young reviewed the social security file.  That file showed that, on multiple occasions, treating mental health professionals expressed the opinion that Ms. Godden suffered from depression and anxiety and was severely limited in her ability to maintain concentration and attention.  Additionally, she had little or no tolerance for workplace stress.  She began suffering from depression in 1990 but it

worsened in December of 2001.  In her mind, it related to her chronic pain and fatigue.  Ms. Young did not believe that these records supported an ongoing disability, however, citing again to the lack of aggressive treatment and to comments from Dr. Hausman which Ms. Young viewed as inconsistent with a disabling psychological condition.  (00182-83).

   The social security file indicates that Ms. Godden applied for disability benefits on August 23, 2002.  On November 19, 2002, the state agency (Bureau of Disability Determination) requested a medical review from Dr. Umana, a psychologist.  She completed the review on January 5, 2003, noting that Ms. Godden's primary diagnosis was fibromyalgia.  Dr. Umana reported her findings on a Psychiatric Review Technique form.  She opined that Ms. Godden suffered from both an affective disorder with depression and an "anxiety disorder due to medical condition." Dr. Umana noted that Ms. Godden's family doctor had reported that her fibromyalgia caused concentration difficulties and that "stress was a problem."  Dr. Umana believed that Ms. Godden was markedly limited both in her ability to maintain concentration and attention for extended periods and to complete a normal workday and work week without interruptions from psychologically based symptoms or to perform at a consistent pace without an unreasonable number and length of rest periods.  For these reasons, Ms. Godden was unable to manage the ordinary work pressures of routine repetitive work.  (0078-95).

   Another state agency reviewer, Dr. Cho, evaluated Ms. Godden's physical capacity and concluded that she could do a full range of light work.  (0069-77).  Otherwise, the records before the social security administration are the same records that Unum previously reviewed, except for a report from Dr. Hausman indicating that Ms. Godden's depression is "most likely related to her physical condition and feelings of helplessness about her

disorder." (0067). The Social Security Administration awarded benefits on January 17, 2003, based on a primary diagnosis of "affective disorders" and a secondary diagnosis of "anxiety related disorders." (00167).

Dr. Russell, a physician consultant to Unum, reviewed all of the records and provided Unum with four opinions by way of a report dated October 27, 2006. First, he concluded that the diagnosis of fibromyalgia was reasonable. Second, he concluded that Dr. Cho's evaluation (which he referred to as having been done by "the unknown SSA examiner") of Ms. Godden's physical limitations was reasonable. Third, he concluded that Ms. Godden's treatment regimen was not consistent with the impairment she reported, although he was asked to express that opinion concerning her treatment after April 1, 2002, and he cited to the lack of treatment from 1999 to 2002 as support. Finally, he did not believe there was any clinical evidence supporting her claim of a cognitive impairment. (0044-50).

Another physician review occurred on November 10, 2006. The review was done by Dr. Brown, a psychiatrist. He noted that the behavioral treatment records were "incomplete and fragmentary" and referred to Dr. Hausman's refusal to provide treatment records. He expressed the opinion to a reasonable degree of certainty that "the information provided is incomplete and problematic." He therefore could not comment on the presence of work-related limitations. (0025-26). He did, however, ask Dr. Hausman to submit his treatment notes. (0023). Christopher Mullen, the appeals consultant assigned to Ms. Godden's case, repeated that request on December 12, 2006. (0014). Apparently, Dr. Hausman continued to decline to submit his treatment notes.

On January 30, 2007, Unum issued its decision. The decision summarized the medical records as well as the opinions received from Drs. Russell and Brown. Unum concluded that while the

-6-

records concerning Ms. Godden's psychological disability were incomplete, taking into account the records which were submitted and the award of social security disability benefits, "disability due to a psychiatric condition is supported." Thus, Ms. Godden was awarded the full 24 months of benefits which were provided for in the policy. Unum declined to find a disability based on non-psychiatric symptoms, and also noted that even if such a disability existed, it was based on self-reported symptoms of fatigue and would therefore be similarly limited. (0005-0012).

IV.

In her motion for judgment on the administrative record, Ms. Godden argues that her fibromyalgia has been a disabling condition continuously since April 1, 2002. She notes that Unum has accepted the diagnosis of that condition as a reasonable one. Then, despite its serious reservations about the sufficiency of the evidence supporting a psychologically-based disability, Unum found such a disability to exist and denied more than 24 months of benefits because of the contractual limitations applicable to mental health conditions. Ms. Godden contends that the record contains no evidence that would contradict the opinions of Drs. Garwood and Season to the effect that her fibromyalgia was disabling. Thus, she asserts that the decision was again arbitrary and unsupported. She also asks for an award of attorneys' fees.

Unum argues, however, that its decision was rational. It contends that it was not obligated to defer to the opinions of the treating doctors concerning Ms. Godden's physical limitations, and that it reasonably credited Dr. Hausman's opinion and the decision of the Social Security Administration. It also argues that the primary evidence of Ms. Godden's physical limitations came from her own report of symptoms, so that benefits could not have been paid for her fibromyalgia beyond

those already paid.  It reiterates that argument in its reply memorandum, noting that although there is a set of diagnostic criteria for fibromyalgia, they necessarily include self-reported symptoms, and that other courts have upheld the payment of only limited benefits for that condition.  Ms. Godden has not filed a reply memorandum and has not directly addressed this issue.

V.

The limitation in the policy relating to mental illnesses and disabilities based upon self-reported symptoms reads as follows:

> Disabilities, due to a sickness or injury, which are primarily based on **self-reported symptoms**, and disabilities due to **mental illness** ... have a limited pay period of up to 24 months.

Original record (doc. #11, at 00292).  Fairly read, Unum's decision relies on both of these limitations.  Because the question of whether fibromyalgia is a sickness that, at least in terms of the limitations it imposes, is primarily based on self-reported symptoms, is a more straightforward question on this record than whether Ms. Godden is disabled by that condition alone, the Court will turn to that question first.

The plan in question contains a definition for self-reported symptoms.  It states that

> **SELF-REPORTED SYMPTOMS** means the manifestations of your condition which you tell your physician, that are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine.  Examples of self-reported symptoms include, but are not limited to headaches, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy.

(Doc. #11, at 00277).  Certainly, the symptoms of fibromyalgia reported by Ms. Godden, such as pain, fatigue, and stiffness are included in this definition.  Thus, the question becomes whether

Unum's conclusion that these symptoms arising from her confirmed diagnosis of fibromyalgia are "not verifiable using tests, procedures, or clinical examinations standardly accepted in the practice of medicine" is arbitrary and capricious.

The most recent decision on this precise issue appears to be Welch v. Unum Life Ins. Co. of America, 2007 WL 4374219 (D. Kan. December 13, 2007). There, the court construed exactly the same limitation provision at issue here in a case which, like this one, involved a confirmed diagnosis of fibromyalgia. The court held that the application of the limitation was arbitrary and capricious for two reasons. First, it noted that there are standard tests or examinations for demonstrating the extent of disability due to fibromyalgia, observing that "the physical limitations imposed by the symptoms of fibromyalgia do lend themselves to objective analysis." Id. at *10 n.15. Second, the consulting physician retained by Unum to review the claim recommended an objective test to verify plaintiff's symptoms (an "ADL examination by a trained physical therapist") but Unum ignored that recommendation. Id. Since Unum had completely disregarded the first part of the plan definition of self-reported symptoms in the face of evidence that the definition was inapplicable, the court granted judgment to the claimant.

Other courts have also concluded, although for somewhat different reasons, that the self-reported symptom limitation does not apply to disability claims based on fibromyalgia. See, e.g., Chronister v. Baptist Health, 442 F.3d 648 (8th Cir. 2006) (because the trigger point test is an objective one, the limitation does not apply); Young v. Unum Life Ins. Co. of America, 2007 WL 4365369 (W.D. La. July 3, 2007) (diagnosis of fibromyalgia is based upon combination of trigger point test and tests ruling out other causes of symptoms and is therefore based on objective findings); Russell v. Unum Life Ins. Co. of America,

-9-

40 F.Supp. 2d 747 (D.S.C.). On the other hand, some decisions, such as Klein v. Betzdearborn, Inc., 2002 WL 32348334 (E.D. Pa. July 9, 2002), have reached a contrary conclusion, and there is a substantial case law concerning whether either the diagnosis of fibromyalgia or the determination of the severity of its symptoms lend themselves to objective verification. See, e.g., Welch v. Unum Life Ins. Co. of America, 382 F.3d 1078, 1087 (10th Cir. 2004).

The Court is in substantial agreement with the analytical model followed by the District Court in Welch, 2007 WL 4374219 (D. Kan. December 13, 2007). As that court noted, the plan language in question is ambiguous because it can be read to limit the benefits payable for either a condition which can be diagnosed only on the basis of self-reported symptoms, or a disability based on such symptoms. There is some dispute about whether the trigger point testing or other tests used to confirm a diagnosis of fibromyalgia are truly objective, but that does not appear to be the key issue here. Rather, as in Welch, the Court interprets Unum's application of the self-reported symptoms limitation to apply to the question of whether Ms. Godden's fibromyalgia is *disabling*. In other words, if objective tests confirm the diagnosis of fibromyalgia, is the extent to which she is impacted by that disease measured primarily on the basis of her self-reported symptoms? If so, it would not appear unreasonable for Unum to have applied the limitation in question to her claim.

In Welch, the court found Unum's actions arbitrary because, in the court's view, the severity of fibromyalgia can be assessed through a standard and objective means and because Unum disregarded a recommendation from its own consultant to have the claimant undergo such testing. This case can be distinguished from Welch, however, with respect to both of these conclusions.

-10-

First, there was evidence in the claim file in <u>Welch</u> that objective tests exist to measure the severity of symptoms caused by fibromyalgia.  There is no similar evidence in this record.  This Court cannot hold as a matter of law that such tests exist or that they are standard in the practice of medicine, nor can it take judicial notice of such a fact.  Indeed, many courts have come to just the opposite conclusion.  It may be arbitrary for an insurer to conclude that no such tests exist when the record it considered identifies and recommends such tests, but that did not happen here.

Second, no consultant for Unum recommended such a test in this case.  It is true that Unum's consultants focused more on the question of whether Ms. Godden's course of diagnosis and treatment was consistent with the presence of disabling symptoms, but none of them suggested that the question could be resolved by having her undergo some standard and objective examination.  Thus, Unum did not arbitrarily decline to follow any recommended procedures here as it did in <u>Welch</u>.

It is true that Unum's decision to apply the self-reported symptom limitation, as an alternate rationale for denying benefits beyond the 24-month period, was made at a very late stage of the proceedings.  Prior to Mr. Mullen's decision of January 30, 2007, this concept does not appear to have been mentioned.  Nevertheless, if Ms. Godden wanted to be heard on the applicability of this limitation, she could have requested reconsideration.  Further, she has not raised any procedural issues in this case concerning the timing of Unum's insertion of this issue into the claim adjudication process.  Finally, she has not addressed the substance of the issue in this Court other than to argue that she should at least be awarded benefits up until the date of the final decision.  The Court does not understand the basis of this argument or how it relates, if at all, to any

language in the plan.  Under these specific circumstances, the Court cannot find Unum's decision to be arbitrary.  A different record, such as that before the court in <u>Welch</u>, might produce a different outcome, but that is not this case and the Court therefore has no need to address that situation.  On this record, Unum's decision is not arbitrary, and Unum is therefore entitled to judgment.

VI.

Based on the foregoing analysis, defendants' motion for judgment on the administrative record (#41) is granted and plaintiff's motion for judgment (#42) is denied.  The Clerk shall enter judgment in favor of the defendants.  This case is dismissed with prejudice.

/s/ Terence P. Kemp
United States Magistrate Judge